FLANDERS INVESTMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

L. O. GORDON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 53907, 53940. Promulgated November 19, 1935.

*Edwin C. Austin, Esq.*, and *Albert W. Torbet, C. P. A.*, for the petitioners.

*Chester A. Gwinn, Esq.*, for the respondent.

OPINION.

SMITH: These proceedings, consolidated for hearing, involve deficiencies in income tax as follows:

| Petitioner | Docket No. | Year | Deficiency |
|---|---|---|---|
| Flanders Investment Co. | 53907 | Period April 18, 1928, to Dec. 31, 1928 | $44,974.22 |
| L. O. Gordon | 53940 | 1928 | 26,092.87 |

The petitions filed in these proceedings allege that the respondent erred in the computation of the deficiencies of each petitioner in holding that the receipt of certain shares of stock is to be treated the same as the receipt of cash; also that the respondent erred in the determination of the deficiency against the Flanders Investment Co. in that he has " treated the sale of capital stock owned by the petitioner of Muskegon Motor Specialties Company as resulting in a profit to the petitioner, having treated the basis of such stock to the petitioner as the cost to a prior owner instead of the cost to the petitioner "; and in the case of L. O. Gordon that he " has erroneously included as a part of the taxable income of the petitioner capital stocks of two Corporations, parties to the reorganization, which were not received by him."

Most of the material facts in both proceedings have been stipulated.

In 1928 the Muskegon Motor Specialties Co., incorporated under the laws of Michigan, hereinafter called Muskegon (Michigan), and the L. O. Gordon Manufacturing Co., likewise a Michigan corporation, were engaged in the manufacture of cam shafts. The officers and stockholders of these companies desired to consolidate the two corporations under a Delaware corporation to be formed and to be called Muskegon Motor Specialties Co. The new corporation is hereinafter referred to as Muskegon (Delaware). The plan was for the Delaware corporation to sell a portion of its capital stock to bankers for cash, which cash was to be received by the stockholders of the two Michigan corporations in addition to certain shares of stock of the new Delaware corporation.

Under date of November 7, 1928, a circular letter was sent to the stockholders of Muskegon (Michigan) which read in part as follows:

Recently the officers and directors of this Company have had under consideration a plan for the reorganization of the Company and its merger or consolidation with L. O. Gordon Manufacturing Company, a Michigan corporation, having its office and plant in the City of Muskegon, Michigan. Negotiations to effect such reorganization of this Company have been carried on with the officers and directors of said L. O. Gordon Manufacturing Company for several weeks past with the result that the following plan for the consolida-

tion or merger of said companies has been unanimously agreed upon by the officers and directors of both companies, by all of the stockholders of L. O. Gordon Manufacturing Company, and by 96% of the stockholders of this Company, and is now submitted to the remaining stockholders of this Company for their approval.

\*      \*      \*      \*      \*      \*      \*

In exchange for the shares of no par value stock now held by the stockholders of this Company, there will be issued to said stockholders shares of Class B stock of said new or consolidated corporation on the basis of 16⅔ shares of said Class B. stock for each share of no par value stock now issued and outstanding and in addition to said stock there will be paid to the holders of the no par value stock of the present company in cash the sum of $171.30 per share.

Muskegon (Delaware) was incorporated on November 24, 1928, with an authorized capital stock of 62,500 shares of class A stock and 187,500 common shares, only 125,000 of which were presently to be issued. On November 27, 1928, Muskegon (Delaware) entered into a contract with certain bankers for the sale to them, for $1,385,000 cash, of 62,500 shares of its class A stock and 15,000 common shares. The agreement provided in part:

2. Upon the closing date hereinafter mentioned, the Company will issue 110,000 additional shares of its common stock and will pay cash aggregating $1,445,004.17 to the owners of the outstanding capital stock of the Gordon Company, consisting of 2,000 shares of the par value of $100 each, and to the owners of the outstanding capital stock of the Muskegon Company, consisting of 4,500.9 shares without par value, in proportions heretofore agreed upon by and between such owners, in exchange for all of the outstanding capital stock of said two companies.

3. The Company agrees that upon the acquisition of the entire capital stock of the Gordon Company, it will cause said company to declare a dividend upon its outstanding stock to the Company in the amount of $60,004.17, so that the net cash cost to the Company of the acquisition of the entire outstanding capital stock of the Gordon Company and of the Muskegon Company will be $1,385,000, exclusive of organization and legal expenses.

On the same date, November 27, 1928, the board of directors of Muskegon (Delaware) adopted the following resolutions:

RESOLVED, that this Company shall cause to be organized under the laws of Delaware, a subsidiary corporation with the name MIDLAND INVESTORS, INC., or other suitable name to be approved by the President or Vice-President of this Company, with an authorized capital stock consisting of 5,000 shares without par value, and which shall have general power to invest in and buy, sell and otherwise deal in stocks and securities and other property and to own and develop patents and trade-marks of all kinds, and that this Company shall subscribe and pay for 5,000 shares of the capital stock of said corporation when organized on the basis of Forty-five Dollars ($45) a share, payable in cash.

RESOLVED, that the Board of Directors of this Company does hereby authorize the issue to or upon the order of Mr. L. O. Gordon of Muskegon, Michigan, of 35,000 shares of the Common Stock of the Company and the delivery to or upon his order duly endorsed in blank of certificates for said 5,000 shares of

said subsidiary corporation when organized and the payment to or upon the order of said L. O. Gordon of Fifteen Thousand Four Hundred Ninety-two and 40/100 Dollars ($15,492.40) in cash, all in consideration of said L. O. Gordon causing to be transferred and delivered to this Company certificates for 560 shares of the capital stock of the L. O. Gordon Manufacturing Company, a Michigan Corporation, fully paid and non-assessable, constituting with 1440 additional shares thereof hereinafter mentioned, the entire outstanding capital stock of said corporation; and the payment to the Union National Bank of Muskegon, Michigan, for the benefit of the holder of the remaining 1,440 shares of the capital stock of said L. O. Gordon Manufacturing Company, in exchange for certificates representing said stock, fully paid and non-assessable, the sum of Four-Hundred Thirty-Three Thousand Five Hundred Seven and 60/100 Dollars ($433,507.60) in cash; said cash to be provided out of the proceeds of the issue of the 62,500 shares of Class A stock authorized at this meeting.

RESOLVED, that this Company shall cause to be organized under the laws of Delaware, a subsidiary corporation with the name NORTON SECURITIES COMPANY, or other suitable name to be approved by the President or Vice-President of this Company, with an authorized capital stock consisting of 3,750 shares without par value, and which shall have general power to invest in and buy, sell and otherwise deal in stocks and securities and other property and to own and develop patents and trade-marks of all kind, and that this Company shall subscribe and pay for 3,750 shares of the capital stock of said corporation when organized on the basis of One Hundred Dollars ($100) a share, payable in cash.

RESOLVED, that the Board of Directors of this Company does hereby authorize the issue to or upon the order of Mr. Fred L. Flanders of Muskegon, Michigan, of 75,000 shares of the Common Stock of the Company and the delivery to or upon his order duly endorsed in blank of certificates for said 3,750 shares of said subsidiary corporation when organized and the payment to or upon the order of said Fred L. Flanders of Three Hundred and Ninety-six Thousand Dollars ($396,000.00) in cash, all in consideration of said Fred L. Flanders causing to be transferred and delivered to this Company certificates for 4,500.9 shares of the capital stock of the Muskegon Motor Specialties Company, a Michigan corporation, fully paid and non-assessable, constituting the entire outstanding capital stock of said corporation; said cash to be provided out of the proceeds of the issue of the 62,500 shares of Class A stock authorized at this meeting.

The Norton Securities Co. and Midland Investors, Inc., were duly incorporated under the laws of the State of Delaware. Muskegon (Delaware) acquired all of the shares of stock of both corporations, paying therefor $375,000 and $225,000, respectively.

Muskegon (Delaware) acquired all of the outstanding shares of stock of Muskegon (Michigan) as follows: From the Flanders Investment Co. 2,228 shares, paying therefor $6,652.23 cash, 3,750 shares of Norton Securities Co., and 37,118⅓ common shares of Muskegon (Delaware); from other stockholders 2,272.9 shares, paying therefor $389,347.77 cash, and 37,881⅔ common shares of Muskegon (Delaware). It acquired all of the shares of the L. O. Gordon Manufacturing Co. as follows: From L. O. Gordon and Margaret E. Gordon, his wife, 560 shares, paying therefor $15,492.40 cash, 5,000 shares

Midland Investors, Inc., and 35,000 common shares of Muskegon (Delaware); from other stockholders 1,440 shares, paying therefor $433,507.60 cash.

Of the 560 shares of L. O. Gordon Manufacturing Co. acquired from L. O. Gordon and Margaret E. Gordon, L. O. Gordon was the owner of 420 shares and Margaret E. Gordon of 140 shares. For these shares Muskegon (Delaware) paid the consideration noted above. The stock of Midland Investors, Inc., was issued 3,750 shares to L. O. Gordon and 1,250 shares to Margaret E. Gordon. The 35,000 common shares of Muskegon (Delaware) were issued 10,000 shares to Margaret E. Gordon, 20,900 shares to L. O. Gordon, and 4,100 shares to other parties.

The Flanders Investment Co. did not report as taxable income for the year 1928 the $6,652.23 cash received by it. Neither did it include as taxable income any part of the fair market value of the capital stock of Norton Securities Co., received by it. The respondent in the determination of the deficiency as shown by the stipulation of facts has treated the—

\* \* \* sum of $6,652.23 and the value of 3,750 shares of Norton Securities Company stock as constituting taxable income to the petitioner.

The Commissioner of Internal Revenue in computing the taxable profit for the year 1928 has treated the basis of the Muskegon Motor Specialties Company (Michigan) common capital stock as: Basis of 2,350 shares acquired from Flanders and Company, $10,212.06; this amount has been increased by the cost of stock acquired in 1928 less the selling price of stock sold in 1928, making the basis applicable to the 2,228 shares transferred to Muskegon Motor Specialties Company (Delaware), $6,867.06.

The stipulation in the case of L. O. Gordon is to the effect that the petitioner reported as taxable income for 1928 the cash received by him, $15,492.40, but did not include as taxable income any part of the fair market value of the shares of Midland Investors, Inc., which he also received. The respondent in the determination of the deficiency has treated the fair market value of the 5,000 shares of Midland Investors, Inc., the same as the receipt of so much cash.

An income tax return was filed by Margaret E. Gordon for the calendar year 1928.

The respondent has computed the cost of 560 shares of the L. O. Gordon Manufacturing Co. stock owned by L. O. Gordon, 420 shares, and Margaret E. Gordon, 140 shares, as being $13,000.

Fred L. Flanders was the president of Muskegon (Michigan) and became treasurer and chairman of the board of Muskegon (Delaware). L. O. Gordon was president of the L. O. Gordon Manufacturing Co. and became president of Muskegon (Delaware).

In bringing about the reorganization of the two Michigan corporations Flanders spoke for the stockholders of Muskegon (Michi-

gan) and Gordon represented the stockholders of the L. O. Gordon Manufacturing Co. The latter acquired proxies from all of the stockholders of the L. O. Gordon Manufacturing Co. (except from Margaret E. Gordon) for the purchase of their shares for cash (at different prices), and on December 6, 1928, assigned those proxies to Muskegon (Delaware), by which they were exercised.

The material portions of the Revenue Act of 1928 applicable to these proceedings are as follows:

SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) *Exchanges solely in kind.*—

\*   \*   \*   \*   \*   \*   \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\*   \*   \*   \*   \*   \*   \*

(c) *Gain from exchanges not solely in kind.*—

(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

(2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property.

\*   \*   \*   \*   \*   \*   \*

(i) *Definition of reorganization.*—As used in this section and sections 113 and 115—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of an acqui-

sition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

The petitioners contend that under the quoted provisions of the statute they are not taxable on the value of the shares of stock of the Norton Securities Co. and Midland Investors, Inc., which they received as part consideration for their shares in Muskegon (Michigan) and L. O. Gordon Manufacturing Co., upon the ground that the exchanges were made in pursuance of a plan of reorganization to which each of the corporations named was a party; that the general plan of reorganization by which Muskegon (Delaware) was created included the acquisition by that corporation of all the shares of stock of the Norton Securities Co. and Midland Investors, Inc., and that the latter corporations were therefore parties to that reorganization under the provisions of section 112 (i) (2) above. They further contend that if viewed separately a reorganization to which those corporations were parties took place when Muskegon (Delaware) acquired all the shares of stock of Norton Securities Co. and Midland Investors, Inc.

At the time these proceedings were submitted to the Board counsel for the respondent, in the presence of counsel for the petitioners, stated the position of the respondent to be this:

That the Midland Investors, Inc., and the Norton Securities Company, Inc., were not parties to the reorganization. If your honor will refer to the chart which has been admitted in evidence he will find that there were in existence the two old companies, the Muskegon Motor Specialties Company of Michigan and the L. O. Gordon [Manufacturing] Company of Michigan. A new company was organized, the Muskegon Motor Specialties Company of Delaware. Into that company the two old companies were consolidated. That is strictly a consolidation within the meaning of the revenue acts, or any other acts; it is a consolidation, and there is no question about it.

That occurred November 24, 1928. A few days later, on December 3, 1928, the Midland Investors, Inc., and the Norton Securities, Inc., both of Delaware, were organized, for a purpose, the sole purpose being to hand over the surplus of these two old companies to the Flanders Investment Company, and L. O. Gordon, in the form of stock of those two holding companies, in order to avoid tax upon the gains that resulted from that transaction. That is the story here.

Had the money been paid in cash, or as part of the surplus earnings or undivided profits, it would have been taxable. Had it been placed in a savings bank and presented that certificate of deposit, it would have been a constructive receipt, and it would have been taxable. We can recognize no difference in the world between taking that surplus represented in the case of the Gordon company as $225,000 which became the sole asset of the Midland Investors company and the $375,000 which became the sole asset of the Norton Securities Company, passing that over to these two new corporations in exchange for its stock, those remaining the sole assets of those corporations, and passing over to the former stockholders all the stock of these two companies.

They owned all of the stock of the companies, and they bought investments in it and held their investment in corporate form rather than in individual capacities.

From the stipulated facts it does not appear just what the "plan of reorganization" of Muskegon (Michigan) and L. O. Gordon Manufacturing Co. into Muskegon (Delaware) was. At the hearing in these proceedings referred to above counsel for the petitioners stated: "The plan of reorganization was evidenced by a series of documents; there is no single memorandum evidencing the plan."

From the circular letter sent to the stockholders of Muskegon (Michigan) on November 7, 1928, it appears that each of the stockholders of that company was to receive for each share of stock of the Michigan corporation 16⅔ shares of the common stock of Muskegon (Delaware) and cash in the amount of $171.30. This appears to have been what each of the stockholders, except the Flanders Investment Co., did receive. So far as the record shows the other stockholders of Muskegon (Michigan), owning 2,272.9 shares out of a total of 4,500.9 shares, had no knowledge that the Flanders Investment Co. was to receive, in lieu of a part of the cash to which it was entitled, shares of stock of the Norton Securities Co.

It does not appear that any circular letter was sent to the stockholders of the L. O. Gordon Manufacturing Co., which had only a few stockholders. L. O. Gordon, president of the company, obtained options from all the stockholders (except himself and wife) for the purchase of their shares of stock for cash. The amount per share to be paid to each varied greatly. L. O. Gordon assigned his rights in those options to Muskegon (Delaware) on December 6, 1928, and the latter acquired the shares of stock of such stockholders by paying in cash the option price. There is no evidence that such stockholders owning 1,440 out of 2,000 shares of the L. O. Gordon Manufacturing Co. had any knowledge of the proposed creation of Midland Investors, Inc.

It is also to be noted that under the contract made with the bankers by Muskegon (Delaware) all of the cash received from them was to be paid over to the stockholders of Muskegon (Michigan) and of the L. O. Gordon Manufacturing Co. in part payment for their shares in those companies.

It is further to be observed that Fred L. Flanders, president of Muskegon (Michigan) became treasurer and chairman of the board of Muskegon (Delaware), and that L. O. Gordon, president of the L. O. Gordon Manufacturing Co., became president of Muskegon (Delaware). They had a dominating voice in the conduct of the Delaware corporation. That company readily agreed to the plan of the Flanders Investment Co. and L. O. Gordon to have it organize the new corporations, Norton Securities Co. and Midland Investors,

Inc., and issue their shares of stock to them in lieu of a part of the cash to which they were entitled.

From the foregoing we think it is plain that the organization of the Norton Securities Co. and of Midland Investors, Inc., was no part of the plan for the reorganization of Muskegon (Michigan) and the L. O. Gordon Manufacturing Co. into the new corporation, Muskegon (Delaware).

The reorganization provisions of the Revenue Act of 1928 (section 112) must be interpreted in the light of their setting. As stated by the Circuit Court of Appeals for the Second Circuit in *Helvering* v. *Gregory*, 69 Fed. (2d) 809:

* * * The purpose of the section is plain enough; men engaged in enterprises—industrial, commercial, financial, or any other—might wish to consolidate, or divide, to add to, or subtract from, their holdings. Such transactions were not to be considered as "realizing" any profit, because the collective interests still remained in solution. But the underlying presupposition is plain that the readjustment shall be undertaken for reasons germane to the conduct of the venture in hand, not as an ephemeral incident, egregious to its prosecution. * * *

In *Gregory* v. *Helvering*, 293 U. S. 465, it was stated:

When subdivision (B) (section 112 (i) (1), Revenue Act of 1928) speaks of a transfer of assets by one corporation to another, it means a transfer made "in pursuance of a plan of reorganization" (section 112 (g)) of corporate business; and not a transfer of assets by one corporation to another in pursuance of a plan having no relation to the business of either, as plainly is the case here. * * *

The venture at hand here was the reorganization of the business being conducted by Muskegon (Michigan) and the L. O. Gordon Manufacturing Co. The evidence does not show that the creation of the Norton Securities Co. and Midland Investors, Inc., was germane to that reorganization. They acquired none of the assets of the old corporations and did not participate in the conduct of the business either before or after the reorganization. They merely received the cash which the petitioners were entitled to receive in exchange for their shares of Muskegon (Michigan) and the L. O. Gordon Manufacturing Co.

The facts here are similar to those in *Ballwood Co.*, 30 B. T. A. 644; affirmed *per curiam, Ballwood Co.* v. *Commissioner* (C. C. A., 3d Cir.), ——.Fed. (2d) —— (July 16, 1935). In our opinion in the above cited case the Board said:

While the exchange in question, the so-called second step, was made pursuant to the original agreement, the terms of which are stated in the letter of February 19, 1929, we do not think that the agreement as a whole must be considered "a plan of reorganization" merely because it was so designated by the parties. Conceivably an agreement entitled "a plan of reorganization" might be drawn up that would involve a series of statutory reorganizations,

each taxable or nontaxable in its execution according to its own conditions. Or there might be an agreement involving a plan of reorganization as only a minor feature. Certainly we would not say that every separate transaction taking place under such an agreement was made "in pursuance of the plan of reorganization." See *E. F. Simms*, 28 B. T. A. 988. The reorganization contemplated by the statute, or the plan of reorganization, is the one of which the exchange sought to be taxed formed a necessary or vital part. * * *

In our opinion the Norton Securities Co. and Midland Investors, Inc., were not parties to the reorganization of Muskegon (Michigan) and the L. O. Gordon Manufacturing Co. Neither do we think that the acquisition by Muskegon (Delaware) of all of the shares of the Norton Securities Co. and Midland Investors, Inc., for cash constituted in either instance a reorganization within the intendment of the statute. Those transactions fall, we think, within the rule laid down by the Supreme Court in *Gregory* v. *Helvering, supra.* There, as here, assets were transferred by one corporation to a newly organized corporation the only function of which was to receive such assets tax-free. The Court there said, following the language above quoted:

* * * Putting aside, then, the question of motive in respect of taxation altogether, and fixing the character of the proceeding by what actually occurred, what do we find? Simply an operation having no business or corporate purpose—a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character, and the sole object and accomplishment of which was the consummation of a preconceived plan, not to reorganize a business or any part of a business, but to transfer a parcel of corporate shares to the petitioner. No doubt, a new and valid corporation was created. But that corporation was nothing more than a contrivance to the end last described. It was brought into existence for no other purpose; it performed, as it was intended from the beginning it should perform, no other function. When that limited function had been exercised, it immediately was put to death.

In these circumstances, the facts speak for themselves and are susceptible of but one interpretation. The whole undertaking, though conducted according to the terms of subdivision (B), was in fact an elaborate and devious form of conveyance masquerading as a corporate reorganization, and nothing else. The rule which excludes from consideration the motive of tax avoidance is not pertinent to the situation, because the transaction upon its face lies outside the plain intent of the statute. To hold otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose.

The facts in the *Gregory* case show that the Averill Co. was an ephemeral corporation which was immediately dissolved after it had served its purpose. The stipulation of facts in the proceedings at bar does not show the dissolution of the Norton Securities Co. and Midland Investors, Inc. There are intimations in the statements made by counsel for the petitioners and also in the briefs filed by

counsel for the petitioners that the Norton Securities Co. and Midland Investors, Inc., did not dissolve during the taxable year before us, namely, 1928. But whether they were dissolved or not appears to us to be immaterial in these proceedings. In any event it is not shown that they had any connection with the reorganized business.

In our opinion the respondent did not err in holding that the shares of stock of the Norton Securities Co. and of Midland Investors, Inc., received by the petitioners were "other property" within the contemplation of section 112 (c) (1) of the applicable taxing statute.

In the determination of the deficiencies the respondent has treated the fair market value of the 3,750 shares of Norton Securities Co. stock at the time received by the Flanders Investment Co. as being $375,000 and the fair market value of the 5,000 shares of Midland Investors, Inc., stock at the time received by L. O. Gordon and Margaret E. Gordon as being $225,000. The petitioners have offered no evidence that the fair market value of those shares was otherwise. The determinations of the respondent with regard to such fair market values are approved.

The petitioner, Flanders Investment Co., alleges in its petition that the respondent erred in the determination of the deficiency in treating "the sale of capital stock owned by the petitioner" of Muskegon (Michigan) "as resulting in a profit to the petitioner, having treated the basis of such stock to the petitioner as the cost to a prior owner instead of the cost to the petitioner."

The stipulated facts show that the Flanders Investment Co. acquired a part of its stock in a tax-free exchange. The respondent in computing the base has simply carried into effect the provisions of section 113 of the Revenue Act of 1928. On brief, the petitioner has not referred to this allegation of error and it must be deemed to have been abandoned.

One allegation of error contained in the petition of L. O. Gordon is that the respondent has attempted to tax the petitioner upon claimed profit from the sale of 560 shares of L. O. Gordon Manufacturing Co. stock, whereas the petitioner was the owner of only 420 shares, and that the respondent used a wrong base in the determination of the deficiency. The petitioner L. O. Gordon was the owner of only 420 shares of the L. O. Gordon Manufacturing Co. The correct base to be used in determining the profit of L. O. Gordon, as is apparent from the stipulation, is $21,000.

Reviewed by the Board.

*Judgment will be entered for the respondent in Docket No. 53907 and under Rule 50 in Docket No. 53940.*