F. A. Wilson v. Commissioner. Barbara Wilson v. Commissioner. Francis A. Wilson v. Commissioner. Barbara Wilson v. Commissioner.
Wilson v. Commissioner
Docket Nos. 103024, 103025, 105055, 105057.
United States Tax Court
1943 Tax Ct. Memo LEXIS 462; 1 T.C.M. (CCH) 571; T.C.M. (RIA) 43085; February 6, 1943
*462 Louis Janin, Esq., for the petitioners. T. M. Mather, Esq., for the respondent. ARNOLD Memorandum Opinion ARNOLD, Judge: These consolidated proceedings involve deficiencies in income taxes and penalties as follows: Docket
No.
Year
Deficiency
Penalty
103024
1936
$16,797.51
103025
1936
635.62
$ 158.91
25%
105055
1937
42,536.81
2,126.84
5%
105057
1937
920.65
46.03
5%
Numerous errors were assigned by petitioners. In the interest of clarity and brevity we set forth the issues, make our findings of fact and render our opinion as to each issue or related issues separately. Francis A. Wilson and F. A. Wilson are one and the same person and he is hereinafter referred to as the petitioner. Barbara Wilson is the wife of the petitioner and during 1936 and 1937 they lived together in San Francisco, California. The petitioner filed his returns for 1936 and 1937, together with the returns prepared by him for his wife for 1936 and 1937, with the collector of internal revenue for the first district of California. The petitioner kept no books of account or permanent records of his personal transactions entered into for profit or investment or otherwise, as distinguished *463 from transactions connected with his brokerage and trading business, as to which he kept a complete set of books of accounts and records. Salary - Wilson Bros. & Co. During the years 1936 and 1937 F. A. Wilson received a salary from Wilson Bros. & Co. for his services to that corporation in the amount of $6,000 a year which was community income, $3,000 of which is includable in the taxable income of each petitioner for 1936 and 1937. In each of the returns filed for 1936 and 1937 for F. A. Wilson and Barbara Wilson, an amount of $6,000 was reported as salary from Wilson Bros. & Co. and included by respondent in his computation of the deficiencies herein. In recomputing the deficiencies such item should be reduced in each proceeding to $3,000 as stipulated. Interest Income. In his 1936 return the petitioner reported interest income in the amount of $8,000. In computing the tax liability of petitioner the respondent increased that amount by adding thereto $4,066.35, representing interest received from Weeden & Co. The amount of $8,000 reported by petitioner included the amount of $4,066.35. The adjustment made by respondent is erroneous and is so conceded on brief. It should, *464 therefore, be eliminated. In his return for 1937 the petitioner reported interest income of $2,400. The respondent increased such item by adding thereto $2,682.24, representing interest received in 1937 by petitioner from Weeden & Co. The amount reported by petitioner represented interest received from Weeden & Co. but was understated in the amount of $282.24. The adjustment made by respondent should therefore be eliminated and the amount reported by petitioner increased from $2,400 to $2,682.24. Dividend Income. In his 1936 return the petitioner reported dividend income in the amount of $14,800. The respondent increased that amount by adding thereto the amount of $7,500 representing dividends received from Wilson Bros. & Co. The amount reported by the petitioner included the amount of $7,500 received in 1936 from Wilson Bros. & Co. It was stipulated that the petitioner received $13,500 in dividends from Wilson Bros. & Co. in 1936 instead of $7,500 and that such amount is taxable in its entirety to him in that year. The total amount of dividend income received in 1936 by F. A. Wilson is $20,800. This is conceded on brief by respondent. In his return for 1937 the petitioner *465 reported dividend income in the amount of $20,770. The respondent in computing petitioner's income tax liability increased the amount reported by adding thereto the amount of $24,629.62, representing dividends of $15,000 received from Wilson Bros. & Co. and other items. The amount reported by petitioner included $15,000, dividends received from Wilson Bros. & Co. It was stipulated that petitioner received dividends from Wilson Bros. & Co. in 1937 in the amount of $21,000 and that such amount is taxable to him in its entirety. The petitioner contends that the correct amount of dividends for 1937 is the amount of dividends reported in 1937, plus $6,000, which is conceded on brief by respondent. The amount of dividends includable in 1937 gross income is therefore $26,770. Miscellaneous Deductions. The respondent disallowed the following deductions claimed in the returns of petitioner as follows: 1936
1937
Taxes
$ 97.22
$ 99.83
Contributions
323.00
327.00
Other deductions
402.50
418.77 Because of lack of substantiating evidence the petitioner concedes such adjustments excepting to the extent of the following amounts for which receipts were produced: 1936
1937
Taxes
$27.47
$5.68
Contributions
25.00
*466 That the taxes and contributions are allowable in the amounts set forth immediately above is conceded on brief by respondent. The "Other deductions" claimed and the amounts for taxes and contributions in excess of the amounts substantiated are therefore not allowable. Personal Exemption. In the returns filed credits for personal exemption were claimed as follows: Amount
Year
claimed
1936
Barbara Wilson
$2,500
1936
F. A. Wilson
None
1937
Barbara Wilson
None
1937
Francis A. Wilson
2,500 In computing the deficiencies herein the respondent allowed to each petitioner in each year a personal exemption credit of $1,000. Section 25 (b) (1) of the Revenue Act of 1936 provides that there shall be allowed a credit against net income in the case of a married person living with husband or wife of $2,500, and that * * * A husband and wife living together shall receive but one personal exemption. The amount of such personal exemption shall be $2,500. If such husband and wife make separate returns, the personal exemption may be taken by either or divided between them. The evidence shows that the parties were husband and wife and lived together during the taxable *467 years involved. This is conceded on brief by respondent. The personal exemption credit of $2,500 is therefore allowable as claimed. Penalties. The petitioner prepared his own returns for 1936 and 1937. It is admitted on brief that petitioner was very careless in the preparation of his returns. The petitioner also prepared and filed a 1936 return in the name of "Mrs. F. A. Wilson" which he signed "F. A. Wilson" in the place provided for the signature of the taxpayer. He also made and filed a 1937 return in the name of "Mrs. Barbara Wilson" which he signed "Barbara Wilson" in the place provided for the signature of the taxpayer. The respondent asserted negligence penalties of 5 percent in docket numbers 105055 (Francis A. Wilson) and 105057 (Barbara Wilson). He asserted a 25 percent penalty in docket number 103025 (Barbara Wilson) for the reason that the return filed was not a proper return under section 51 of the Revenue Act of 1936. No proper return was filed by Barbara Wilson for 1936 and the asserted penalty is approved. Uhl Estate Company v. Commissioner, 116 Fed. (2d) 403. Moreover, petitioners in their brief have not included the penalties *468 in the enumeration of issues in controversy nor discussed the propriety thereof. Any allegation of error in reference thereto must be deemed to have been abandoned. See Flanders Investment Co. et al., 33 B.T.A. 483, 493. The amounts thereof will be modified in accordance with the modified deficiencies. Loss - Steamer Svea. The petitioner in 1936 and 1937 owned a 9/128th interest in a steamer called "Svea" which had not been operated since about 1930. Expenses incurred for the repair and maintenance of this steamer during the taxable years were paid by Wilson Bros. & Co. and charged against the steamer, and not to the several owners thereof, in an account carried in the ledger of Wilson Bros. & Co. The total amount expended during 1936 for repairs and maintenance of such steamer by Wilson Bros. & Co. and charged to the account was $1,786.43. In his return the petitioner claimed a deduction of $125.61 as a loss, representing his pro rata share of such expenses. On brief the petitioner claims that he is entitled to a similar deduction in 1937 in the amount of $271.27. No deduction was claimed in his 1937 return for that amount unless it was included *469 in some other claimed deduction as to which there is no evidence. The respondent does not question on brief the facts or the amounts, but contends that the petitioner has failed to present any evidence which would entitle him to the deduction, either as a loss or a business expense. The petitioner testified that he was a lumber merchant, a shipping operator and a stock broker, and that he conducted his brokerage business, as well as his shipping business and lumber business, at 1112 Russ Building, San Francisco. He kept no books of accounts or permanent records with respect to his personal affairs and transactions, as distinguished from his business transactions. His books of accounts, so far as disclosed by the record, reflected only transactions relating to his brokerage and trading business. In his returns he reported profit or loss from only one business. In his 1936 return he deducted the amount of $125.61 as "Steamer loss" under item 15, "Losses by Fire, Storm, etc." The expenditures were not made to repair any damages to the steamer as a result of fire, storm, shipwreck or other casualty to the steamer Svea. They represent the "lay-up cost", including cost of dry-docking, *470 painting and repairs to keep the steamer in condition. The expenditures were recorded in an account in the ledger belonging to Wilson Bros. & Co., a corporation. The petitioner also testified that Wilson Bros. & Co. either recovered the amount of expenditures charged to such account from profits of future operations or they assessed the shareholders of this joint venture, but that he had never been assessed and had not paid his purported share thereof. His testimony also indicates that the account had been written off as a bad debt by Wilson Bros. & Co. but had been restored later. It would appear, therefore, that this was an enterprise in which the petitioner was interested as a stockholder of Wilson Bros. & Co., and that he was not regarded as personally liable for such expenses or any part thereof. Furthermore his returns were made on a cash basis and since no part of such expenses were paid by petitioner he is not entitled to any deduction. To be entitled to the deduction of a loss the petitioner has the burden of showing that he sustained a loss in the taxable year not compensated for by insurance or otherwise: (1) in his trade or business, or (2) in a transaction entered into *471 for profit though not connected with his business, or (3) arising from fires, storms, shipwreck, or other casualty. Section 23 (e), Revenue Act of 1936. To be entitled to an expense deduction under section 23 (a) of the Revenue Act of 1936 the petitioner has the burden of showing that the amount involved is an ordinary and necessary expense paid in the taxable year in carrying on any trade or business. A taxpayer claiming a deduction has the burden of "showing that the deduction clearly falls within some deduction provision of the taxing act." White v. United States, 305 U.S. 281. This the petitioner failed to do. The claimed deductions pertaining to the Steamer Svea are therefore not allowable. Bad Debt Deduction - 1936. On May 1, 1923, the petitioner purchased 6 percent sinking fund gold bonds of the Federal Sugar Refining Co., due May 1, 1933, of the par value of $10,000 at a cost of $9,775. The Spreckels Sugar Corporation, a Delaware corporation, acquired in 1929 from the Federal Sugar Refining Co. all its assets including its sugar refinery at Yonkers, N. Y., and assumed payment of the above bonds outstanding. On January 18, 1932, receivers *472 were appointed for Spreckels Sugar Corporation and they immediately took possession of its properties. A bondholders' protective committee sought by suit to establish a preference for the bondholders and to preserve the estate generally. After a hearing before the United States District Court it was determined by the court late in 1936 that substantially all of the assets in the hands of the receivers were applicable solely to the payment of preferential claims such as taxes and receivership and administration expenses, the total of which claims as allowed by the court exceeded the proceeds from the sale of all properties of the corporation, exclusive of certain shares of a subsidiary of no value, plus the cash and collectible accounts the receivers had on hand, thus leaving nothing available for the holders of the bonds. The committee so advised the bondholders. The brother of petitioner held similar bonds of the par value of $10,000 as trustee. In the latter part of 1936 he was informed by the trust officer of the Crocker First National Bank that according to information received the bonds were worthless, and upon advice of tax counsel should be charged off in 1936. The petitioner *473 discussed the matter with his brother and made investigations of his own and ascertained that such bonds were worthless in 1936. He claimed a bad debt deduction in the amount of $10,000 on his 1936 return which the respondent disallowed for the reason that the petitioner had failed to submit any evidence substantiating the deduction. The petitioner has now done so. The balance sheet as of January 16, 1932, of the corporation set forth in a preliminary report made by the receivers discloses that the assets of the corporation had a book value of over $14,000,000 whereas its total liabilities, other than stock liability and certain contingent liabilities, amounted to about $5,400,000. In a note appended to such balance sheet it is stated that the "sound value" of the fixed assets, which had a book value of about $11,200,000, as determined from an appraisal, was about $6,800,000. The petitioner kept no books of account pertaining to his so-called personal affairs and hence a formal charge-off is not required. William H. Redfield, 34 B.T.A. 967; Shiman v. Commissioner, 60 Fed. (2d) 65; Jones v. Commissioner, 38 Fed. (2d) 550. *474 The respondent argues on brief that if this issue is to be determined upon what a prudent man may reasonably be expected to ascertain the petitioner by not charging off the debt in an earlier year was closing his eyes to the obvious. However, he points to no particular circumstances or event as the obvious upon which ascertainment of worthlessness would have been based by a prudent man. The affairs of the corporation apparently became involved and various suits were pending. Under all the circumstances it was not unreasonable to rely upon reports made by the bondholders' protective committee and to await the determination of the court upon the question of whether or not the bondholders were entitled to be preferred. Under the provisions of section 23(k) of the Revenue Act of 1936 deduction of a bad debt is allowable in the year it is ascertained to be worthless and this does not impose upon the taxpayer the absolute risk of selecting the year the debt actually became so. Rosenthal et al. v. Helvering, 124 Fed. (2d) 474. In our opinion the petitioner is entitled to a bad debt deduction in 1936 in the amount of $9,775.00. Bad Debt Deduction - 1937. *475 In 1927 the petitioner made a loan in the amount of $5,000 to one John B. Knox, which was evidenced by a promissory note dated July 16, 1927, in such amount payable on or before 5 years after date with interest at the rate of 6 per cent per annum, payable semi-annually. The petitioner ascertained the debt to be worthless in 1937. In his return for 1937 he deducted only $4,000. The respondent disallowed the deduction for the reason that the petitioner had failed to make available adequate record evidence necessary to substantiate the deduction. On brief the respondent argued that the petitioner in not charging off the debt in an earlier year closed his eyes to the obvious. The evidence discloses that the petitioner was rather disposed to charge off an indebtedness and claim a deduction therefor, at least in regard to this debt, promptly and perhaps prematurely rather than otherwise. He claimed a deduction in his 1932 return, the year in which the note by its terms was definitely payable, but the deduction was disallowed by the Commissioner upon the ground that it had not been ascertained to be worthless in that year. The respondent introduced no evidence and there is no evidence *476 definitely showing that the debt was worthless prior to 1937. The fact that the debt was paid in a subsequent year by the wife of the debtor from funds received by her from the estate of her father who died after 1937 is immaterial. Apparently respondent brought out this fact to show that the debt was not worthless in 1937 or prior thereto. It appears that the petitioner reported the recovery as income in his return for 1939, the year the debt was paid. In our opinion the petitioner is entitled to a bad debt deduction in 1937 in the amount of $5,000, applying either the "objective" test approved in Hirsch v. Commissioner (C.C.A, 9th Cir.), 124 Fed. (2d) 24, affirming 42 B.T.A. 566, or "subjective" test approved in Rosenthal et al. v. Helvering, supra.In the Hirsch case the court stated that upon the evidence the taxpayer was no more justified in charging off the debt in 1935 than in the preceding year. The only question before the court in that case was whether the determination of the Board that the taxpayer had failed to overcome the presumptive correctness of the Commissioner's determination *477 disallowing the deduction in 1935 was supported by substantial evidence. Herein the evidence shows that the petitioner personally kept in touch with his debtor and his financial status and that it was not until 1937 that the debtor definitely and unmistakably informed the petitioner that he would not and could not pay the debt and any attempt to enforce payment would fail. This then was a definitive event establishing worthlessness in 1937 upon which ascertainment of worthlessness was bottomed. It is to be noted that in San Joaquin Brick Co. v. Commissioner, 130 Fed. (2d) 220, the Circuit Court of Appeals, 9th Circuit, holds that Rosenthal et al. v. Helvering, supra, "correctly sets forth the true rule" with respect to the deduction of bad debts. 1936 - Salary $2,500 and Interest $3,000. In his 1936 return the petitioner reported the amount of $2,500 as salary and the amount of $3,000 as interest income. No adjustment was made by the respondent in respect to such items in computing petitioner's tax liability for 1936. The determination made treated the amounts as having been income to petitioner. In his petition *478 the petitioner alleges that his return correctly and completely stated the amounts of each item of income. He now claims that he erred in including such amounts in his 1936 gross income on the ground that each item represented a "charge" made against his mother, one for handling her affairs and the other for interest on money loaned her, and that he did not collect or receive the amounts. The evidence shows that petitioner in connection with his mother's return for 1936 caused to be prepared and signed an affidavit in which it was stated that the $3,000 interest item "represents actual amount of interest and receipt is available for same." Without further and substantiating evidence in view of his inconsistent position, the record made does not justify a finding that the items involved did not represent income received by petitioner in 1936 as reported by him. Brokerage Business Income. During the years involved the petitioner operated a brokerage business in his own name in San Francisco, California. In 1936 and 1937 he was a member of the San Francisco Stock Exchange. He purchased his seat in 1932 for $10,500. Subsequent cash distributions reduced the cost to about $6,500. *479 He had from 150 to 175 customers for which securities were bought and sold for a commission. In addition he bought and sold securities on his own account hereinafter referred to as trading transactions. In his 1936 and 1937 return he reported as business income (or loss) ($21,751.69) and $9,366.55, respectively, the latter amount representing one-half of the profits of his business as shown by his books, the other half, or $9,366.56, was included and reported by the petitioner in the 1937 return prepared by him for his wife as community income. In determining the tax liability of petitioner for 1936 and 1937 the respondent made various adjustments resulting in a profit from his business of $11,417.43 for 1936, and $52,522.26 for 1937. In determining business net income the respondent disallowed operating expenses as follows: (a) expenditures for opera tickets, (b) $200 paid to employees, (c) amount paid for adding machine, and (d) auto and travel expenses. (a) In 1936 and 1937 the petitioner deducted as an expense of his business the amount of $140.20 and $119.00, respectively. The amounts were paid for opera tickets, most of which were given to petitioner's employees and to some *480 of his customers. He attended the opera only two or three times. He testified that it was good advertising for a broker to appear at the opera and to meet customers there and secure business for being there. An expense to be allowable under section 23 (a) must be both "ordinary" and "necessary" and made or incurred in "carrying on any trade or business." Welch v. Helvering, 290 U.S. 111. The evidence in our opinion fails to overcome the presumption of correctness of respondent's determination that such items were personal expenses. The action of the respondent in disallowing such items must be approved. (b) In determining petitioner's 1937 income from his brokerage and trading business the respondent disallowed $200 which he designated as gifts. The amount represented compensation paid by petitioner to his employees in his brokerage business in the nature of a bonus at Christmas. We have held that amounts paid to employees during Christmas as additional compensation for services rendered are deductible as a business expense. Guitar Trust Estate, 34 B.T.A. 857; George Ringler & Co., 10 B.T.A. 1134. *481 The respondent erred in disallowing this item as a business expense. (c) The respondent disallowed as a 1936 business expense the amount of $42.40 for the reason that it was a capital expenditure. The amount was paid in 1936 for a new adding machine. The petitioner testified that he deducted this amount as a current expense because the machine was a very cheap adding machine and would not last long and he did not want to carry such a minor item on his books. It is argued by the petitioner that it is a well established policy of income tax accounting that small isolated capital items be treated as an expense of operation rather than capitalized and depreciated. Accounting policy is not determinative of whether an item is deductible from gross income. Deductions depend upon "legislative grace; and only as there is clear provision therefor can any particular deduction be allowed." New Colonial Ice Co. v. Helvering, 292 U.S. 435. Expenditures for office furniture and equipment having a useful life in excess of a year are capital expenditures and not deductible as business expense. See Arthur J. Marks et al., 9 B.T.A. 1047; *482 Alling & Cory Co., 7 B.T.A. 574; Larrowe Milling Co., 3 B.T.A. 245. The evidence fails to show the exact life of the adding machine but apparently it had a useful life in excess of a year as there is no evidence that it had been discarded and was not in use after 1936. The action of the respondent must therefore be approved. (d) In 1936 and 1937 the respondent disallowed the amounts of $1,731.28 and $2,865.95, respectively, designated as automobile and travel expenses on the ground that such items were not a necessary expense in petitioner's business. The petitioner owned a Lincoln automobile in 1936 and 1937. He used it in frequent trips to Oakland, San Jose and Palo Alto, to contact clients. It was used in San Francisco to transport clients and to go to the Federal Building to purchase documentary and stock transfer stamps. In 1937 the petitioner made a trip to New York in the automobile for the purpose of investigating the advisability of purchasing a seat on the New York Stock Exchange. He remained there about a month. The petitioner used the automobile to go to Alameda about once a week to attend to the Steamer Svea *483 which he managed. He also made a trip to Los Angeles to secure a charter for the steamer. The petitioner testified that he presumed the amounts deducted for auto and travel expense were set forth in detail in his books of account but the accounts pertaining to these items were not adduced in evidence, although the bookkeeper testified and the books were present. The petitioner also testified that he would say that 20 per cent of the use of the automobile was personal and 80 per cent was business and that he accordingly charged 80 per cent to the brokerage business, and that of the $1,700 about $1,000 represented depreciation and the balance operating expenses. However, the testimony of petitioner indicates that he was not familiar with the contents or details of his books of account except in a general way. There is no evidence from which we are able to determine whether or not the charges made on his books were limited to the use of the automobile in his brokerage and trading business, or what items the amounts actually represented. The evidence shows that the petitioner was employed by Wilson Bros. & Co. and that he transacted other "business" such as that pertaining to the Steamer *484 Svea. It also appears that the petitioner was not very exact and rather careless in matters of this kind. There is no evidence from which the amount allowable as depreciation can be determined. From the evidence adduced we are notable to make even an approximation in accordance with Cohan v. Commissioner, 39 Fed. (2d) 540. The action of the respondent must be approved. Trading Transactions. The petitioner also bought and sold securities on his own account. He carried an account in his books designated "Trading Short Account," in which were entered certain short transactions entered into by the petitioner or his employees on the floor of the stock exchange as principal on his own account, not as agent. Under the rules of the San Francisco Stock Exchange members were required to make quarterly reports of their financial position in which among other things they were required to show their long position, giving an inventory based upon the last sale or cost, whichever was lower, and also their short position, giving an inventory based upon the last sale or cost, whichever was higher. At the end of 1935 a credit entry was made in this account in the *485 amount of $35,554.84 "to bring inventory of higher of sale or market." At the end of 1936 a similar credit entry was made in such account in the amount of $55,344.68 "to adjust to higher of sale or market." As a result the account showed a loss of $52,379.12. The respondent restored the inventory adjustments, thus reducing the loss in such amount to $32,589.28. In 1937 a similar credit entry was made in this account in the amount of $19,523.81 which the respondent restored, as a result of which the profit balance at the end of the year was increased from $2,532.19, as shown by the books, to $22,056, as determined by respondent. The amount paid out in 1936 for dividends, premiums and borrow and reborrow taxes on this account aggregated $6,404.70. The petitioner in the transactions entered in this account was a trader buying and selling securities on his own account for profit. There were about six members of the Exchange who followed a custom of selling short to other members so as to keep transactions on the San Francisco Stock Exchange and to prevent the business going elsewhere. This custom was actuated by a profit motive, not only as to the particular transaction but as to their *486 business in general. The petitioner contends that he is entitled to "follow this method of accounting," as a "dealer in securities," because it was in accordance with an established custom in the San Francisco Stock Exchange, conceding, however, that the petitioner did not maintain a stock of securities for sale to the public but sold the securities first and then repurchased stock of the same kind sold short. In Schafer v. Helvering, 299 U.S. 171, the court held that a "dealer in securities" within the treasury regulations permitting a dealer in securities to inventory his stock in computing income is "limited to one who, as a merchant, buys and sells securities to customers for profit thereon." To the same effect Francis Shelton Farr et al., 44 B.T.A. 683. Not being a security dealer the petitioner is not entitled to use the inventory method in computing his income. The petitioner contends that if he is not entitled to make the so-called inventory adjustments he is entitled to the deduction in 1936 as an ordinary and necessary expense of the amount of $6,404.70, consisting of amounts paid in 1936 as (a) dividends *487 on borrowed stock, (b) premiums for the loan of securities, and (c) borrow and reborrow taxes, all paid out in connection with short sales reflected in the trading short account. The premiums and borrow taxes are in the same category with dividends on borrowed stock so far as expenses in connection with short sales are concerned. One authority of W. Hinckle Smith, 44 B.T.A. 104, and Dart v. Commissioner, 74 Fed. (2d) 845, it is held that this amount is deductible as an ordinary and necessary business expense. See to the contrary Commissioner v. Levis' Estate et al., 127 Fed. (2d) 796. 1936 - Trading Special Short Account. The petitioner's books of account carried in 1936 and 1937 another trading account designated as "Trading Special Account." This account was set up pursuant to an agreement between petitioner and one of his employees, William F. Osgood. Osgood had been in the employ of petitioner since 1932 and rendered services for petitioner as trader, accountant, office manager and cashier. He was paid a fixed salary of $150 a month. To stimulate the interest of Osgood in his business *488 and in order to pay him a salary more commensurate with the services he rendered, it was agreed between petitioner and Osgood that the above account should be set up and that Osgood should receive 25 per cent of the net operating profits realized on transactions entered in such account as additional compensation for all his services. Osgood had no financial interest in the account or in the transactions entered therein. In 1936 the net profits realized from transactions in such account were $23,372.54. Pursuant to the agreement Osgood was entitled to additional compensation of 25 per cent of that amount, or $5,843.11, which was paid to him. In his computation of the deficiency for 1936 the respondent took in consideration in computing the gains and losses from trading the amount of $17,529.43 only. The petitioner claims that the amount of $17,529.43 should be increased to $23,372.54 and that the amount of $5,843.11 should be allowed and deducted as an ordinary and necessary expense. No such contention is made for 1937 although the item was similarly treated by respondent for the reason that the trading transactions resulted in profit in 1937, whereas such transactions in 1936 resulted *489 in a loss. Such loss as determined by respondent is $13,465.40 which he treated as a capital loss and limited the deduction thereof to $2,000. Apparently the petitioner seeks to have the amount of $5,843.11 treated the same way as the respondent treated other business expenses which would effect a reduction in that amount in his net business income. In our opinion the $5,843.11 was paid as additional compensation to Osgood. No question is raised as to the reasonableness of the amount paid. It is, therefore, deductible as an ordinary and necessary expense under section 23 (a), Revenue Act of 1936. Independent Electric Machinery Co., 3 B.T.A. 116; Thomas N. Perkins, 33 B.T.A. 606. 1937 - Hendrickson-Shuman Account. In computing the deficiency for 1937 the respondent increased petitioner's income by including therein the amount of $10,289.39 with the following explanation "Restoring deferred income on Hendrickson-Shuman earnings." This trading account was set up on the books of account of petitioner in the latter part of August 1936 and designated as "Trading No. 2, Hendrickson-Shuman Account." Hendrickson-Shuman & *490 Co. were traders in odd lots on the San Francisco Stock Exchange, and did not deal with the public. Under date of February 9, 1937, the petitioner entered into a written agreement with that company under the terms of which the petitioner as first party agreed inter alia to buy from the company as second party "such securities listed on the San Francisco Stock Exchange, as may be mutually agreed upon by the contracting parties" and second party agreed to repurchase such securities within thirty days at an advance in prices as follows: (a) 1/8 point advance if repurchased in one day (b) 1/8 point additional advance if repurchased within one week (c) 1/8 point advance per week, in addition to above, for each following first week (d) 1/8 Second party to receive the benefit of any dividends paid while the stock was held by first party. At the end of 1937 the account showed a profit in the amount of $10,289.39. This amount represented the profit realized by the petitioner on stocks repurchased by Hendrickson-Shuman pursuant to the agreement. On December 15, 1937, the Board of Governors of the San Francisco Stock Exchange considered matters pertaining to the business of Hendrickson-Shuman *491 and its financial status, including its agreement with the petitioner. The company was requested by the Board to clear up its financial situation and being unable to do so was ordered by the Board on January 12, 1938 to cease business. The company thereafter liquidated and their seats on the exchange were sold. The petitioner did not include the profit of $10,280.39 in his reported income for 1937. That amount was treated as deferred income. The petitioner on brief contends that the amount should not be treated as income in 1937 on the theory that a taxpayer on an accrual basis should not be charged with income if there exists good reason for believing that the income cannot be collected, citing American Fork & Hoe Co., 33 B.T.A. 1139. To show that the petitioner believed that the account was uncollectible is not sufficient. The petitioner must adduce evidence to show that he had a reasonable basis for his belief. There are statements by the petitioner and Osgood that the financial condition of the company was in a grave condition, but no facts were adduced in evidence upon which such conclusions were based. There is no evidence that the company was *492 insolvent. It is true that the company was ordered to cease business by the Board of Governors of the Stock Exchange but evidence fails to disclose the reason for the order except that the company had been asked to immediately correct their financial position on December 15, 1937, and being unable to do so were ordered to cease business on January 12, 1938. On brief it is admitted that the amount was paid in 1938. Osgood testified that the company many times was forced to carry over stock which they could not get rid of and that at times the stocks that "they were forced to carry were a little bit greater than their cash capital could handle" and that because of these situations arising the contract was entered into between the company and petitioner. It may be that because the company permitted such situations to arise and the contract with petitioner itself were the cause of the order of the Board of Governors and that such practice did not meet with its approval. In American Fork & Hoe Co., supra, the evidence shows that the debtor was insolvent and in receivership and also that subsequent events substantiated the correctness of the belief of the *493 taxpayer that the obligation would never be collected. That case is therefore distinguishable on the facts. In our opinion the petitioner has failed to show that the amount of $10,280.39 was uncollectible and did not represent income in 1937. In determining the tax liability of Barbara Wilson for 1936 the respondent increased reported taxable income by adding thereto additional income of (a) dividends - $180, (b) interest - $95.26, and (c) capital gain - $4,320.91, and by disallowing claimed deductions of (d) contributions - $85.00, (e) taxes - $51.23, and (f) losses - $4,214.50. No evidence was adduced in respect to any of these items, excepting item (c), and are conceded by petitioner. Item (c). On July 18, 1933, the petitioner purchased 100 shares Great Northern preferred stock at a cost of $3,170.00. The shares were sold on February 24, 1936 for $4,320.91, resulting in a gain of $1,150.91. The petitioners contend that as the shares were held for more than two but less than five years only 60 per cent of the gain is includable in the 1936 income of Barbara Wilson under section 117 (a) of the Revenue Act of 1936. This is conceded by the respondent on brief. Adjustment should *494 be made accordingly. The respondent therefore erred in including the amount of $4,320.91, representing the sale price of the shares involved in the 1936 gross income of Barbara Wilson. In determining the tax liability of Barbara Wilson for 1937 the respondent increased reported taxable income by adding thereto additional income of (a) interest $80.73, and disallowing claimed deductions as follows: (b) contributions - $175.00, (c) taxes - $88.74, (d) losses - $1,892.00, and (e) other deductions - $8,071.82. These adjustments are conceded by petitioner and the disallowance thereof must, therefore, be approved. As heretofore stated, the amount of $9,366.56 included by petitioner in the return of his wife for 1937 represented one-half of the profits of his business, as shown by his books. The respondent determined that the profits realized by petitioner from his business in 1937 was not community income on the ground that the capital thereof was inherited from his father and therefore was his separate property. He included the entire profit from the business as determined by him in petitioner's gross income for 1937 but he failed to eliminate the amount of $9,366.56 from the gross income *495 of Barbara Wilson for 1937. The amount should be eliminated from her income upon recomputation of her tax liability under Rule 50. The petitioner further contends that the respondent erred in not allocating a part of the business income representing commissions earned to petitioner's wife as her share of community income. He also contends that if the $2,500, reported as salary received from his mother, is treated as income in 1936, then one-half of that amount should also be allocated to his wife as her share of community income. This contention is based upon the ground that the commissions and salary were compensation for personal services, and hence community income. Since the amount of $2,500 was reported as compensation for services it is community income and half thereof is includable in the income of petitioner's wife for 1936. Clara B. Parker, Executrix, 31 B.T.A. 644. However, there is no evidence which should enable us to determine what portion of the business net income was compensation to petitioner for his services. See Clara B. Parker, Executrix, supra. In that case an apportionment was made on the basis *496 of a fair return on the decedent's capital investment and a reasonable compensation for his services. To treat the amount of the commissions, less all of the office expenses, as salary or compensation for petitioner's services is not justified because the evidence shows that the commissions were not earned as a result of petitioner's efforts or services alone and because some of the operating expenses were incurred in connection with the trading activities. No allocation of such expenses can be made upon the evidence. There is no evidence from which the reasonable value of petitioner's services can be determined as a basis of allocation as was done in Anton Dolenz, 41 B.T.A. 1091. Osgood was paid $1,800 a year and in 1936 received additional compensation of $5,843.11. The services he rendered must have been essentially different from those rendered by the petitioner since he was employed and acted as accountant, office manager, cashier and trader. The petitioner received a salary of $6,000 a year from Wilson Bros. & Co. Obviously he did not devote all of his time to his brokerage and trading business as Osgood was required to do. Since the evidence *497 is insufficient to determine the amount of income received by petitioner as compensation for his services in his business his contention must fail. Decision will be entered under Rule 50.