THOMAS N. PERKINS, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 57848, 58305, 58306, 58443, 58475, 58770, 58772, 58904–58907, 58917, 58918, 58925.

Promulgated November 29, 1935.

*Kenneth W. Howes, Esq.*, and *Charles B. Rugg, Esq.*, for the petitioners.

*Bruce A. Low, Esq.*, and *L. H. Rushbrook, Esq.*, for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith: Edmund J. Shattuck; G. H. M. Company; Fiduciary Trust Co., Elizabeth Bagley Reed and Almeda Bagley Meyers, Trustees; Perkins & Buttrick Trust; Thomas N. Perkins, John Richardson and George H. Morrill, Trustees u/w George H. Morrill; Thompson Oil Company; Eastern Carbon Black Company; W. H. Davis; Lillian A. Davis; Matilda M. Davis; Alton N. Davis; Emma Luette Davis, Executrix u/w O. L. Davis; Lue Davis; and Davis Brothers Company.

608

612

OPINION.

SMITH: ■ The petitioners in the nine highest docket numbers in these proceedings contend that the deficiencies are barred by the statute of limitations. They contend that the returns were filed on April 13, 1928. The deficiency notices were mailed under date of April 14, 1931. If the returns were filed on April 13, 1928, as claimed by the petitioners, then the period within which the respondent could mail notices of deficiency expired on April 13, 1931, or one day prior to the date they were actually mailed. The applicable statute is section 277 of the Revenue Act of 1926, which provides, so far as pertinent, as follows:

SEC. 277. (a) Except as provided in section 278—

(1) The amount of income taxes imposed by this Act shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

The returns in question were prepared in Boston, Massachusetts, and sent to the offices of the Davis Brothers Co. in Charleston, West Virginia. They were signed and verified on April 10, 1928. One H. H. Corrie, a public accountant of Charleston and the accountant for Davis Brothers Co. and most of the stockholders of that company, was to attend to the filing of the returns. April 13, 1928, fell on Friday. W. H. Davis was anxious that the returns be filed on that day. All of the nine petitioners above referred to had obtained an extension of time for the filing of the returns which expired on April 15, which was Sunday. When on April 13 Davis got back to his office after lunch he telephoned Corrie's office to have him come over and attend to the filing of the returns that afternoon. He was informed that Corrie was already on his way to the Davis Brothers Co. office. He soon arrived, looked over the returns, and dictated to a stenographer, who had custody of the returns, a form of receipt for the returns to be signed by the deputy collector with whom they were

to be filed. Corrie then took the returns, went across the street to the Federal Building where he purchased a money order, went upstairs and filed the returns with Emory Kirby, the deputy collector, and took his receipt therefor. The signature of Kirby upon the receipt is admitted. This was between 2 and 2:30 o'clock that afternoon. The receipt reads in part as follows:

> Charleston, W. Va.,
> April 13th, 1928.
>   Received this day of H. H. Corrie the following tax returns with checks as noted:

Then follows a list of tax returns, including those of the last nine named petitioners. Corrie immediately returned to the office of Davis Brothers Co. and delivered the receipt to the stenographer, who filed it away with the duplicates of the returns. Corrie then busied himself with accounting matters in the office of Davis Brothers Co. for the balance of the afternoon. Corrie's diary for April 13, 1928, has a notation that he filed the returns on that day and that he was engaged at the office of Davis Brothers Co. all of that afternoon. The next day he was engaged on other matters.

The returns are stamped as having been received in the deputy collector's office on April 14, 1928. Kirby's daily report for April 13 does not show the receipt of the returns by him on that date whereas his daily report for April 14 shows the receipt of the returns on that day. His daily reports for April 13 and April 14 were made out and mailed to the collector on April 14. Kirby testified that he was always careful to place his stamp upon tax returns on the day filed, and, although he had no personal recollection as to the time of the filing of the returns, he was of the opinion that they must have been filed in his office on April 14, and that in signing the receipt for the returns he inadvertently failed to notice the date borne by the receipt.

The evidence that the petitioners filed their returns on April 13 is convincing. There were several witnesses who distinctly remember that Corrie came into the office of Davis Brothers Co. on the afternoon of April 13 and left his office with the returns under his arm and that he was back in the office within a period of less than half an hour. Some of these witnesses were not in the office of Davis Brothers Co. on Saturday, April 14. It is also to be noted that Corrie was engaged in work for other clients than Davis Brothers Co. on the fourteenth and did not go near the Federal Building on that day. In view of all the evidence upon this point, the presumption of correctness as to the date of filing which attaches to the records of the collector's office is overcome. We find as a fact that the returns were filed on April 13, 1928.

Section 241 (b) of the Revenue Act of 1926 requires that "Returns shall be made to the collector of the district in which is located the principal place of business or principal office or agency of the corporation." The question arises as to whether the returns filed with the deputy collector on April 13, 1928, were properly filed. Kirby testified that one of his duties, although a minor one, was that of receiving income tax returns. Under section 3148 of the Revised Statutes, as amended, each deputy collector—

\* \* \* shall have the like authority in every respect to collect the taxes levied or assessed within the portion of the district assigned to him which is by law vested in the collector himself, but each collector shall, in every respect, be responsible, both to the United States and to individuals, as the case may be, for all moneys collected, and for every act done or neglected to be done, by any of his deputies while acting as such.

Since the collector had authorized his deputy at Charleston to receive income tax returns at his office, we think there can be no question but that the filing of the returns with the deputy collector was a filing within the contemplation of section 241 (b) of the Revenue Act of 1926. Cf. *Landram* v. *United States*, 16 Ct. Cls. 74, on powers and duties of deputy collectors.

The Federal income tax return for 1927 of Eastern and Thompson was a consolidated return together with the Owl Oil Co., the wholly owned subsidiary corporation of Eastern. These corporations had filed a consolidated income tax return for a part of the year 1925 and for the year 1926 and at the time that the consolidated return for 1927 was filed it was assumed that that return also should be a consolidated return. It was not until 1929, more than a year after the 1927 consolidated return was filed, that the respondent ruled these corporations not entitled to file consolidated returns for the years 1925 and 1926. The consolidated return filed for 1927 was filed in good faith.

The respondent contends that the consolidated return did not enable him to determine the separate income of Thompson and that therefore the filing of the consolidated return did not start the running of the statute of limitations with respect to Thompson.

An inspection of the schedules attached to the consolidated return shows that the separate gross incomes and deductions of each of the three corporations whose financial operations were included in the consolidated return are set forth in separate columns. Thus the consolidated return furnished the respondent with the information necessary to determine the net income of each corporation separately to the same extent as if they had each filed a separate return. It has been held in numerous decisions that the filing of such a consolidated return starts the statute of limitations running in favor of each of

the corporations included therein. *F. A. Hall Co.*, 3 B. T. A. 1172; *Stetson & Ellison*, 11 B. T. A. 397; affd., 43 Fed. (2d) 553; *Continental Oil Co.*, 23 B. T. A. 311; *Newport Co.*, 24 B. T. A. 1246, 1275. We hold therefore that the filing of the consolidated return set in operation the statute of limitations with respect to Thompson the same as for the other petitioners named.

The respondent makes the further contention that the income tax returns of Eastern, Thompson, the G. H. M. Co., and Davis Brothers Co. were false or fraudulent with intent to evade tax and that therefore the statute of limitations has not run with respect to these companies. At the conclusion of the hearing the respondent moved for the imposition of the 50 percent addition to the deficiency in the case of each of these companies provided for by section 275 (b) of the Revenue Act of 1926, which in material part provides as follows:

> If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency * * * shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3176 of the Revised Statutes, as amended.

The respondent alleges that an inspection of the returns filed by the four corporations named shows that " it would be utterly impossible from an examination thereof to unravel the many transactions involving transfer of assets and stock, for statements and references thereto were either omitted, studiously concealed or absolutely falsified." We have carefully examined the record in these proceedings for the purpose of determining the correctness of the grave charges made by the respondent. On such examination we reach the conclusion that the evidence discloses no intent on the part of the four corporations involved to evade tax, and further that there is no ground for the suspicion that the returns were false or fraudulent with an intent to evade tax. The evidence all goes to show that at most the petitioners sought to minimize their tax liabilities by meticulously following what they believed to be the proper interpretation of the provisions of the statute relating to the reorganization of corporations. Taxpayers are not required so to conduct their business as will best pay the Treasury. *Helvering* v. *Gregory*, 69 Fed. (2d) 809. The fact that in following the letter of the law they have not escaped tax liability is no ground for assuming that they had been fraudulently trying to do so.

We reach the conclusion that the statute of limitations has operated to bar the collection of the deficiency due from the nine petitioners referred to above; also, that the return of the G. H. M. Co., the only one of the corporate petitioners before us in these proceedings whose deficiency is not barred by the statute of limitations, was not false or fraudulent with intent to evade tax, and that therefore the 50

percent addition to the deficiency determined for the G. H. M. Co. was not incurred.

■ In these proceedings the petitioners contend that when Eastern and Thompson transferred their gas and oil properties to Interstate in exchange for all of their shares which they immediately distributed as dividends to their two corporate stockholders, the G. H. M. Co. and Davis Brothers Co., a reorganization was effected under the provisions of section 203 (h) of the Revenue Act of 1926; that when the G. H. M. Co. and Davis Brothers Co. received the shares of stock of Interstate they realized no taxable income because those shares of stock were distributed to them pursuant to a plan of reorganization; and that when the shareholders of the G. H. M. Co. and of Davis Brothers Co. received as dividends shares of stock, on the one hand, of the Morrill Securities Co., and, on the other hand, of the Union Holding & Investment Co., they likewise received no taxable income since they represented distributions pursuant to a plan of reorganization. They admit, however, that the stockholders of the G. H. M. Co. are taxable upon the cash actually received by them from Hodges, trustee, through the G. H. M. Co.

Section 203 (h) of the Revenue Act of 1926 provides in part:

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

Section 203 (b) of the same act provides in part:

(3) No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

(4) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

The petitioners admit that the steps taken involving the transfer of the gas and oil properties to be sold by Thompson and Eastern to Interstate, the creation by the G. H. M. Co. and Davis Brothers Co. of the Morrill Securities Co. and Union Holding & Investment Co., respectively, and the creation of the Hodges trust, etc., were for the purpose of availing themselves of the reorganization provi-

sions of the Revenue Act of 1926 and limiting tax liability. There was never any intention on the part of Eastern to reorganize its corporate business. Thompson was to be dissolved because it was to sell all of its assets to Hamilton. It was never contemplated that Interstate, the Morrill Securities Co., and the Union Holding & Investment Co. should be operating corporations. They were simply to hold the shares of stock turned over to them for a short period and then be dissolved. This was done. Likewise, Hodges, trustee, was simply to hold the title to the properties to be sold for a period of a few days, convey the legal title to the properties to Hamilton, receive the cash from the purchaser, and turn it back to the beneficiaries of the trust. As soon as these objects were accomplished the trust was terminated.

In *Gregory* v. *Helvering*, 293 U. S. 465, it was stated:

When subdivision (B) [section 203 (h) (1)] speaks of a transfer of assets by one corporation to another, it means a transfer made " in pursuance of a plan of reorganization " (section 112 (g)) of the corporate business; * * *

There was no reorganization of the corporate businesses of Eastern, of Thompson, or of the other corporations involved in these proceedings. The following language of the Supreme Court in the above quoted case is apposite to the proceedings at bar:

* * * The whole undertaking, though conducted according to the terms of subdivision (B), was in fact an elaborate and devious form of conveyance masquerading as a corporate reorganization, and nothing else. The rule which excludes from consideration the motive of tax avoidance is not pertinent to the situation, because the transaction upon its face lies outside the plain intent of the statute. To hold otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose.

See also *Ballwood Co.* v. *Commissioner* (C. C. A., 3d Cir.), —— Fed. (2d) —— (July 16, 1935), affirming 30 B. T. A. 644.

No contention is made by the petitioners that the shares of stock of Interstate, the Morrill Securities Co., and the Union Holding & Investment Co. did not have the fair market value attributed to them by the respondent in the determination of the deficiencies. The substance of the contention of the petitioners is that the recipients of those shares are not liable to income tax in respect to them as of the date of receipt, because they were received pursuant to a plan of reorganization under the statute. In accordance with the principle of law enunciated in the above cited cases the claim of the petitioners that the reorganization provisions of the Revenue Act of 1926 are applicable to these proceedings can not be sustained.

■ The petition of the G. H. M. Co. alleges:

(a) The respondent has improperly treated the petitioner as realizing a taxable profit of $141,797.45 upon the liquidation in the year 1927 of Thompson Oil Company, whereas the petitioner realized no taxable income as a result of such liquidation.

(b) The respondent has allowed the petitioner a deduction of only $14,179.75 on account of "adjustment to salary of officer" whereas the petitioner is entitled to a deduction on this account of $94,313.99 and is thereby entitled to a refund of taxes for the year 1927 of $12,732.38 with interest thereon.

The issue set forth in the foregoing paragraph (a) is as to whether, as the petitioner claims, the stock of Interstate received by it in the course of liquidation of Thompson, was received pursuant to a reorganization exchange and therefore not subject to tax, or whether, as the respondent claims, it was received as a dividend in liquidation without protection from tax by the reorganization provisions of the statute. The petitioner argues that the transfer by Thompson of all of its assets to Interstate in exchange for stock of Interstate followed by the distribution of Interstate stock thus received by Thompson to its stockholders and the dissolution of Thompson, was a reorganization under section 203 (h) (1) (A) of the statute; accordingly, that the exchange by the G. H. M. Co. of its 900 shares of stock in Thompson for stock in Interstate falls within the provisions of section 203 (b) (2) of the statute as follows:

No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

It is submitted that both Thompson and Interstate were parties to the reorganization hereinabove described and that the exchange was made in pursuance of the plan of reorganization.

We have held above that there was no reorganization within the contemplation of the statute of Eastern and Thompson. Accordingly, the reorganization provisions of the statute may not be invoked by the G. H. M. Co. for the purpose of minimizing its tax liability. The G. H. M. Co. is liable to income tax upon the profit realized by it from the exchange of its shares of stock in Thompson for the shares of stock of Interstate, as determined by the respondent.

The G. H. M. Co. further argues that, if Thompson is liable to income tax in respect to the transaction by which it sold its assets to Hamilton, then the profit computed by the respondent in the amount of $141,797.45 is in excess of the actual profit realized by it from the receipt of the shares of stock of Interstate. We have found, however, that the collection of any deficiency from Thompson is barred by the statute of limitations. Since this is so, the taxable profit found by the respondent to be $141,797.45 is not in excess of the actual profit received by the G. H. M. Co. as a result of the liquidation in 1927 of Thompson.

In these proceedings the respondent moved to increase the deficiency due from the G. H. M. Co. on the ground that the shares of Interstate stock received by the G. H. M. Co. as a dividend from

Eastern constituted in part a liquidating dividend. In the determination of the deficiency the respondent treated the value of these shares as an ordinary dividend. The evidence of record is that Eastern was not liquidated in whole or in part. None of its outstanding shares were canceled or redeemed and the distributions made by Eastern to its stockholders were either out of earnings accumulated since February 28, 1913, or out of increase in value of assets accrued after that date. After the payment of the dividend the books of Eastern still showed a large surplus. In the determination of the deficiency due from the G. H. M. Co. the respondent treated the dividend from Eastern as giving rise to no taxable income. He has not sustained the burden of showing the liquidation of Eastern in whole or in part. Therefore, the claim of the respondent for an increased deficiency due to the receipt of the Interstate shares from Eastern can not be allowed.

In the determination of the deficiency the respondent has disallowed the deduction from the gross income of the G. H. M. Co. of $80,134.24 representing a portion of the bonus paid to Frederick P. Bagley as treasurer and general manager. Bagley had been the chief executive of the G. H. M. Co. for a period of nearly twenty years. In 1918 or 1920 his salary had been fixed at $15,000 per year plus 10 percent of the profits of the company. He had received a bonus of 10 percent of the profits of the company for a period of several years prior to 1927. He received the same bonus in 1927. The G. H. M. Co. realized that it had sustained a large profit in 1927 as a result of the dividends which it had received from Eastern and Thompson in the form of shares of Interstate stock. Under his contract with the company Bagley was entitled to receive 10 percent of the profits from this source. The Interstate shares received by it had a fair market value at the date of receipt of $1,375,000. It was determined that the amount received less its investment in the shares of the stock of Eastern and Thompson constituted a profit of $943,139.90 and that Bagley was entitled under his contract to 10 percent of that amount, or $94,313.99. This amount was accrued to the credit of Bagley on the books of the G. H. M. Co. as of December 31, 1927, and paid to him in February 1928.

In the audit of the return the respondent determined that under the contract with Bagley the G. H. M. Co. owed him only 10 percent upon the profit made by the G. H. M. Co. from the liquidation of Thompson. The respondent therefore allowed the deduction of $14,179.75 of the $94,313.99 claimed, and disallowed the balance, $80,134.24.

The taxing statute permits the deduction from gross income of "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a

reasonable allowance for salaries or other compensation for personal services actually rendered." (Sec. 234 (a) (1), Revenue Act of 1926.) It is not necessary under the statute that services must be rendered within the year for which the payment is made. *Lucas* v. *Ox Fibre Brush Co.*, 281 U. S. 115. What constitutes reasonable compensation for services deductible from gross income must be determined in the light of facts and circumstances in each individual case. In Regulations 69, promulgated under the provisions of the Revenue Act of 1926, it is provided:

* * * Generally speaking, if contingent compensation is paid pursuant to a free bargain between the employer and the individual made before the services are rendered, not influenced by any consideration on the part of the employer other than that of securing on fair and advantageous terms the services of the individual, it should be allowed as a deduction even though in the actual working out of the contract it may prove to be greater than the amount which would ordinarily be paid.

(3) In any event the allowance for the compensation paid may not exceed what is reasonable in all the circumstances. It is in general just to assume that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises in like circumstances. The circumstances to be taken into consideration are those existing at the date when the contract for services was made, not those existing at the date when the contract is questioned.

In *Austin* v. *United States*, 28 Fed. (2d) 677, it was held that the fact that " in the actual working out of the contract contingent compensation may prove to be greater than the amount which ordinarily would be paid " was no ground for the denial of part of the deduction.

The evidence of record in these proceedings shows that the additional compensation paid to Bagley by the G. H. M. Co. in 1927 was pursuant to the contract made between the G. H. M. Co. and Bagley many years prior thereto. There is no reason to question the reasonableness of the contract, or the reasonableness of the compensation paid to him pursuant to its terms. There is no ground for a suspicion that the amount paid to Bagley was in any wise a distribution of a part of the profits to a stockholder in lieu of the payment of the same in the form of a dividend. Neither is there any element of a gift in the payment of the $94,313.99.

The fact that the amount was not actually paid to Bagley within the year 1927 is of no consequence. The G. H. M. Co. kept its books of account and made its income tax returns upon the accrual basis. All the facts necessary for the determination of the liability were known by the G. H. M. Co. within the year 1927. The accrual of the same as an expense of 1927 to the G. H. M. Co. was proper. See *Continental Tie & Lumber Co.* v. *United States*, 286 U. S. 290; *New York Central R. R. Co.* v. *Commissioner*, 79 Fed. (2d) 247.

The action of the respondent in disallowing the deduction of $80,134.24 of the bonus paid is reversed.

The motion of the respondent made at the conclusion of the hearing of these proceedings for the addition to the deficiency of the G. H. M. Co. of the fraud penalty provided for by section 275 (b) of the Revenue Act of 1926 is denied for reasons set forth above.

■ In view of our conclusion that the reorganization provisions of the statute are not effective to limit the liability of the stockholders of the G. H. M. Co., the appeal of the Perkins and Buttrick Trust, Docket No. 58543, presents only one allegation of error to be considered. This allegation of error is stated in the petition as follows:

(d) If the petitioners' trust received any taxable dividend from the George H. Morrill Company (which the petitioners deny) then the respondent has erred in taxing such dividend to the petitioners' trust since under the terms of the petitioner's trust any such dividend would be distributable to the life beneficiary and accordingly taxable to her and not to the trust as an entity. Moreover, in such event, the respondent has erred in failing to refund to the petitioners' trust a substantial part of the Federal income tax already paid for the calendar year 1927.

The facts applicable to this issue are contained in finding number 4. From that finding it is seen that the trustees were given the " uncontrolled discretion " to determine what constituted net income and in the case of securities backed by wasting assets, or associations and trusts, were given the " uncontrolled discretion " to determine what was principal and what was income, and, further, could in their discretion distribute to any and all of the beneficiaries any amount they decided on. On form 1041 filed for 1927, the trustees showed as distributed to beneficiary $6,587.55; then, under capital net gain or loss, " Trustee as an equity for which a return on form 1040 has been filed, $173,396.69." Thus it is seen the trustees treated the income as an accretion to capital, as to which, according to the instrument from which they derived their power and the beneficiary her income, their decision was absolutely final except for fraud. The trustees further filed a return on form 1040 for the trust and paid a tax thereon.

From a careful reading of the trust instrument (Exhibit 66), we are of the opinion that the respondent did not err in taxing the trust on the undistributed income. In *St. Louis Union Trust Co.* v. *United States*, 3 Fed. Supp. 630, it was held that where the income from a trust had not been distributed or paid by the trustee to the beneficiaries and was not held by the trustee to be currently and regularly distributed to the beneficiaries, the trustee was liable under section 219 of the Revenue Act of 1926 for the tax on the income of the trust. We are of the opinion that the respondent has correctly held the trust liable to income tax on the property dividend, which was not distributed to the beneficiary.

■ It does not follow that because the reorganization provisions of the Revenue Act of 1926 are not effective in the determination of the liability of the petitioners involved in these proceedings that the transactions taken thereunder were nullities. The G. H. M. Co. distributed as a dividend to its stockholders shares of stock of the Morrill Securities Co. These shares of stock had a fair market value. The recipients of the dividend, Thomas N. Perkins, Edmund J. Shattuck, and the trust u/w George H. Morrill, are liable to income tax in respect to the value of the shares received. *United States* v. *Phellis*, 257 U. S. 156. The respondent did not err in taxing each of the G. H. M. Co. stockholders upon the value of the dividend received by each. The fact that the stockholders had an understanding that a particular use would be made of the property dividend received by them in no wise serves to exempt them from tax upon the value of the property dividend received. See *Sarther Grocery Co.* v. *Commissioner*, 63 Fed. (2d) 68, and *Edward A. Langenbach*, 2 B. T. A. 777.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*