Ziegler Steel Service Corp. v. Commissioner.
Ziegler Steel Service Corp. v. Commissioner
Docket No. 85758.
United States Tax Court
T.C. Memo 1962-57; 1962 Tax Ct. Memo LEXIS 252; 21 T.C.M. (CCH) 311; T.C.M. (RIA) 62057; March 16, 1962
*252 Respondent disallowed as unreasonable one-half the compensation paid by petitioner to its president, the owner of 50 percent of petitioner's stock, in each of the fiscal years ending April 30, 1956, and April 30, 1957. The compensation was fixed, on a contingency basis, by petitioner and its president in arm's-length negotiation prior to the years in question. Petitioner's success was due in large measure to the efforts of its president. Held, the compensation was reasonable. George M. Bryant, Esq., 668 S. Bonnie Brae St., Los Angeles, Calif., and Houstin Shockey, Esq., for the petitioner. William J. Kass, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income taxes in the amounts of $34,035.14 and $29,786.70 for the fiscal years ending April 30, 1956, and April 30, 1957, respectively. The sole question for our determination is the reasonableness of salary payments made by petitioner to its president in each of the above-noted years. Findings of Fact Certain facts have been stipulated. The stipulation of facts, together with attached exhibits, is incorporated herein by this reference. Petitioner is the Ziegler *253 Steel Service Corp., hereinafter sometimes called the corporation, which was incorporated April 17, 1953, under the laws of the State of California. Since its incorporation it has engaged in the sale and distribution of steel, with its principal place of business in Los Angeles, California. Petitioner filed corporation income tax returns on an accrual basis for the taxable years ending April 30, 1956, and April 30, 1957, with the district director of internal revenue in Los Angeles. On April 30, 1953, petitioner acquired the assets, assumed the liabilities, and took over the business of Ziegler Steel Service Co., a partnership of which Herbert Ziegler, hereinafter sometimes called Ziegler, was general partner, and Olive Anne Geiger, as nominee of Glendale Steel Corporation, of New York, New York, hereinafter sometimes called Glendale, was limited partner. Herbert Ziegler owned 50 percent of petitioner's outstanding stock in the years involved. The remaining 50 percent of the stock was owned by Glendale. George Baird was the principal stockholder of Glendale. All of Glendale's stock was owned by members of the Baird family. Olive Anne Geiger was George Baird's daughter. Except for *254 association in the Ziegler Steel Service Co. partnership and the corporation, Herbert Ziegler and Glendale, and its shareholders, are unrelalted. Herbert Ziegler has been in the steel business since the time of his graduation from college in 1932. His first employment was with Truscon Steel Company, of Youngstown, Ohio. In 1933 he joined Apollo Steel Company, of Apollo, Pennsylvania, where he was employed principally as a district sales manager. In 1939 he joined Reliance Steel Corporation, of Cleveland, Ohio, where he was similarly occupied. From August 1941 until December 1941 he was employed by the Office of Price Administration, in Washington, D.C., where he participated in the writing of the first steel price control regulations prior to World War II. Upon leaving that employment, he formed the Ziegler Steel Service Co. in California as a manufacturers' agency business. In 1945 he met George Baird then president and chairman of the board of Glendale, who proposed formation of a partnership. Subsequently, Olive Anne Geiger, as nominee of Glendale, and Herbert Ziegler entered into a partnership agreement which provided in pertinent part as follows: II That the character of the *255 business of the partnership is the purchasing, warehousing and sale of steel and other metals, including the shearing and slitting thereof, and the representation as agent of steel mills and warehouses and manufacturers of steel products. * * *
IV That the name and place of residence of each member of the partnership is as follows, the general and limited partners being respectively designated: Names:
Status:
Residence:
Herbert Ziegler
General
634 So. Gramercy
Partner
Place, Los Angeles
5, Calif.
Olive Anne Geiger
Limited
60 Stratford Road
Partner
Rockville Center,
New York
* * *
VI That the amount of cash contributed by the said limited partner is $10,000.00; and that no other property has been contributed by said limited partner. VII That the additional contributions agreed to be made by said limited partner, and the events on the happening of which they shall be made, are as follows: cash, in such amounts and at such times as may be specified by the general partner, but not exceeding the total sum of $30,000.00. VIII That the share of the profits or other compensation by way of income which said limited partner shall receive by reason of her contribution is as follows: (1) 20% of the net profits *256 derived from the representation as agent of steel mills and warehouses and manufacturers of steel products, excluding, however, commissions received on direct mill sales from regular mill sources of the partnership, which commissions shall be distributed in accordance with the provisions of subdivision "2" of this article; and (2) With respect to all other partnership business, after payment to the general partner of 20% of the net profits of such other partnership business or $1000.00 per month, whichever is greater, said limited partner shall receive one-half of all remaining net profits. Herbert Ziegler's employment contract with the corporation contained provisions for compensation which were the same in substance as those which prevailed in the preceding partnership, to-wit, 20 percent of the net profits earned by the corporation before computation or provision for Federal income taxes and state franchise taxes, with a minimum monthly payment of $1,000. The provisions for compensation were suggested by George Baird. The following schedules reflect the sales, net earnings before taxes, and distributions to partners of Ziegler Steel Service Co., a partnership, and the sales, net *257 earnings before taxes, and salaries paid to Herbert Ziegler by Ziegler Steel Service Corp.: Ziegler Steel Service Co.
Distribution to Partners
Net Earnings
Before
Herbert
Olive Anne
Year
Sales
Income Taxes
Ziegler
Geiger
Difference
1945
$ 83,039.06
$ 17,915.88
$ 11,473.01
$ 6,442.87
$ 5,030.14
1946
256,345.19
68,256.22
42,808.45
25,447.77
17,360.68
1947
627,056.14
165,794.16
101,792.19
64,001.97
37,790.22
1948
1,109,002.82
257,917.07
155,650.96
102,266.11
53,384.85
1949
838,340.40
76,378.84
46,289.65
30,089.19
16,200.46
1950
1,627,015.33
315,633.78
190,663.24
124,970.54
65,692.70
1951
2,486,548.67
577,839.46
354,599.37
223,240.09
131,359.28
1952
2,033,500.16
274,834.95
166,222.38
108,612.57
57,609.81
1953 [1]
801,181.95
114,029.26
69,623.23
44,406.03
25,217.20
Ziegler Steel Service Corp.
Net Earn-
Salary
ings Before
Paid to
Fiscal
Income
Herbert
Year
Sales
Taxes
Ziegler
4/30/54
$2,244,381.02
$150,486.58
$ 43,305.41
4/30/55
2,825,103.25
175,919.17
45,541.74
4/30/56
4,356,492.07
516,331.40 [1] *258 130,904.50
4/30/57
4,826,888.24
437,301.78 [1]
114,564.43
Petitioner's officers for the taxable years ending April 30, 1956, and April 30, 1957, were Herbert Ziegler, president; Robert M. Baird, vice president; William Wedel, Jr., hereinafter sometimes called Wedel, secretary; S. B. Thompson, hereinafter sometimes called Thompson, treasurer; and Matilda Baird, assistant secretary-treasurer. [For the fiscal year ending April 30, 1957, Wedel and Thompson, in addition to being secretary and treasurer, respectively, were vice presidents of the corporation.] Petitioner's board of directors was comprised of Herbert Ziegler, chairman, William Wedel, and two members of the Baird family. Herbert Ziegler has been president and chairman of the board of directors of petitioner since its incorporation in 1953. He has at all times been the active head of petitioner's operations. He has directed all matters of business policy. Glendale was consulted regarding major policy matters. Ziegler has developed supplier contacts to assure the availability of steel from the mills. He constructed *259 and has expanded petitioner's sales organization. He has opened and staffed branch offices and sales outlets. And he has secured the services of competent management and executive personnel. From its original investment of $40,000 in 1945, Glendale realized more than $1,000,000 in less than 15 years from the partnership and the corporation. Salary payments to Ziegler by petitioner amounted to $130,904.50 and $114,564.43 for the fiscal years ending April 30, 1956, and April 30, 1957, respectively. This compensation represented 20 percent of petitioner's net profits before Federal income and state franchise taxes for the years noted. William Wedel, Jr., received compensation from petitioner of $24,030.03 and $24,330.79 for the fiscal years ending April 30, 1956, and April 30, 1957, respectively. S. B. Thompson received compensation from petitioner of $24,030.03 and $24,330.79 for the fiscal years ending April 30, 1956, and April 30, 1957, respectively. Wedel's and Thompson's salaries were arrived at by agreement with Ziegler. The oral salary agreements provided for a basic weekly pay plus a percentage of net profits. This contingent compensation acted to reduce Ziegler's compensation. *260 William Wedel, Jr., has been employed by petitioner and its predecessor, Ziegler Steel Service Co., since 1946. He devoted 100 percent of his time to petitioner's business; acted as office manager and purchasing agent; supervised office personnel; placed orders through channels developed by Ziegler; supervised inventory; and assisted in the everyday business of petitioner. S. B. Thompson has been employed by petitioner and its predecessor, Ziegler Steel Service Co., since July 1948. Thompson devoted 100 percent of his time to petitioner's business. He was accountant-office manager. His duties embraced all of petitioner's accounting functions and credit work. He kept Ziegler advised of the status of petitioner's working capital and needs for financing. He did some incidental selling. He acted, in the absence of Ziegler, in contacting petitioner's attorney and its accounting firm with regard to various accounting problems and financial matters. In 1957 and 1958 Thompson also was secretary-treasurer of Fabricated Steel Service Corporation and Specialty Steel Sales Corporation. He devoted no time to these companies during petitioner's business hours and received no remuneration from these *261 companies. Herbert Ziegler and his family are the sole owners of the Fabricated Steel Service Corporation and Specialty Steel Sales Corporation. They also own 50 percent of the stock of Rolled Steel Products Corporation. Ziegler has been the president of Fabricated Steel Service Corporation and vice-president and treasurer of the other two corporations since at least 1956. Ziegler receives no compensation from Fabricated Steel Service Corporation or Specialty Steel Sales Corporation. He is paid $200 per month by Rolled Steel Products Corporation. Petitioner [and before it, its predecessor, Ziegler Steel Service Co.] engages in the warehouse steel business. Sources of supply are arranged. Steel is purchased. An inventory of various types of steel is maintained. This steel is then sold. Petitioner attempts to anticipate the needs of its customers for specific kinds and conditions of steel. It attempts to place itself in a position to meet those needs. Two crucial considerations are sources of supply and maintenance of an inventory which is in accord with the demand for particular types of steel. At the time of trial of this case petitioner advertised and considered that it had the largest *262 stock of aircraft "sheet" and "plate" in the country. Executives of petitioner, other than Herbert Ziegler, spend 99 percent of their time within the plant and office. There are approximately 100 companies in the Los Angeles area which are in the business of warehousing and reselling mill steel. Opinion This case involves the reasonableness of salary payments made by petitioner to its president, Herbert Ziegler, during the fiscal years ending April 30, 1956, and April 30, 1957. The Internal Revenue Code of 1954 provides in pertinent part as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; The Income Tax Regulations under this section were not promulgated until 1958. [1] *263 They do not vary, however, from the pertinent portions of the Treasury Regulations promulgated under the Internal Revenue Code of 1939, [2] *264 which are applicable to the years before us. Sec. 7807, Internal Revenue Code of 1954. Respondent disallowed as unreasonable 50 percent of petitioner's deduction for compensation paid to Ziegler for each of the fiscal years ending April 30, 1956, and April 30, 1957. Respondent argues that other officers of the corporation, to-wit, its secretary and vice president, William Wedel, Jr., and its treasurer and vice president, S. B. Thompson, are not shown to have been unable to perform the tasks performed by Ziegler. Respondent asserts that neither Ziegler's qualifications *265 nor the complexities of the tasks performed by him justify the compensation he received. Respondent notes further that petitioner offered no evidence of salaries paid to persons whose positions and responsibilities were comparable to those of Ziegler. Petitioner argues that the compensation paid Ziegler is allowable as a deduction, even though in excess of an amount which might ordinarily be paid, because payment to Ziegler was made under a contract entered into a number of years prior to the years in question in an arm's-length arrangement between Ziegler and the corporation, and was similar to the arrangement between Ziegler and his partner in the corporation's predecessor, Ziegler Steel Service Co. In accordance with a partnership agreement entered into between Ziegler and the nominee for Glendale Steel Corporation in 1945, Ziegler received 20 percent of the net profits of the partnership before provision for Federal income taxes or state franchise taxes. Thereafter, net profits were divided between Ziegler and the other partner equally. Shortly after the partnership business was incorporated in 1953, a similar arrangement for compensation was made between Ziegler and petitioner. *266 At the time of incorporation Glendale received 50 percent of the stock and Ziegler the remaining 50 percent of the stock. A presumption of correctness attaches to the respondent's determination, and petitioner bears the burden of proving that the salaries in question were reasonable. Botany Mills v. United States, 278 U.S. 282 (1929). Thus, we have carefully examined the evidence presented by petitioner to determine whether this burden has been satisfied. Under the regulations, contingent compensation paid pursuant to a free bargain is allowable as a deduction. Regulations 118, sec. 39.23(a)-6(b)(2). However, it is clear that the allowance for compensation paid "may not exceed what is reasonable under all the circumstances." Regulations 118, sec. 39.23(a)-6(b)(3). This Court often has found reasonable, however, deductions for compensation paid upon the basis of an arm's-length agreement providing that a percentage of profits will be paid to the officer, even though he may be a stockholder. See, e.g., California Vegetable Concentrates, Inc., 10 T.C. 1158; Thomas N. Perkins, 33 B.T.A. 606; Streckfus Steamers, Inc., 19 T.C. 1. In the instant case, the arrangement for compensation *267 was suggested by George Baird, the principal shareholder of Glendale, who approached Ziegler in 1945 with respect to the formation of a partnership to engage in the business of steel warehousing and selling. Baird and his family owned Glendale, a company engaged in the steel business. We may presume that his arrangements with Ziegler were neither uninformed nor lacking in business self-interest. No relationship, other than that which arose because of the partnership and later the corporation, existed between Ziegler and Glendale or any of Glendale's stockholders. At the time of incorporation the arrangement for compensation as provided in the articles of partnership was continued in much the same form. For all of the above reasons, it seems to us that the provisions for compensation of Ziegler arrived at in July 1953, after the corporation was formed, constituted an arrangement which resulted from an arm's-length bargain, uninfluenced by any consideration other than that of securing the advantages of Ziegler's ability for the corporation. Certainly, there is nothing in the evidence to suggest that Ziegler was able to dominate the corporation through his ownership of 50 percent of the *268 stock. Thus, the arrangements for compensation appear to satisfy the requirements of the regulations. Regulations 118, sec. 39.23(a)-6, quoted supra; and see Streckfus Steamers, Inc., supra. It is necessary, however, that the compensation paid not exceed what is reasonable under all circumstances. Regulations 118, sec. 39.23(a)-6(b)(3). Respondent contends that the compensation was not reasonable. He introduced the testimony of the president of another firm, engaged in designing, fabricating, and erecting structural steel in the Los Angeles area where petitioner's principal office was located. While this executive received substantially less in salary than Ziegler, he testified on cross-examination that he had no contract of employment and fixed his own salary to suit his own purposes. Furthermore, respondent's witness testified that the business of his company was not similar to that of petitioner. The record does not otherwise demonstrate that the business in which the witness's company was engaged was sufficiently similar to that of petitioner to make the wages paid that executive relevant to the issue before us. Petitioner did not offer evidence of compensation paid by similar *269 business for services comparable to those performed by Ziegler. [3] While such evidence may aid the Court in determining whether a particular payment of compensation was reasonable, no inference is to be drawn from the absence of such evidence herein. Cf. Miller Mfg. Co. v. Commissioner, 149 F. 2d 421 (C.A. 4, 1945), affirming a Memorandum Opinion of this Court; Smoky Mountains Beverage Co., 22 T.C. 1249. Ziegler has been in the steel business since 1932. He originally formed Ziegler Steel Service Corp.'s predecessor as a sole proprietorship in 1941. The partnership with Glendale was formed in 1945. At that time Glendale invested $40,000 in the partnership. The record demonstrates that Glendale realized more than $1,000,000 in less than 15 years from this original investment. It is clear that Ziegler has at all times been the active head of petitioner's operation; that he has successfully developed petitioner's lines of supply; that he has successfully *270 expanded and staffed petitioner's operations; that he has consistently increased petitioner's business; and that he has provided the over-all guidance for a profitable enterprise. Furthermore, we are satisfied from the record that petitioner's business is not lacking in complexity. On the contrary, it is necessary for its success that steel inventories be maintained in a manner which is consistent with potential customers' needs, both in terms of quantity and specification. We are satisfied that the complexities of the operation are significant and that petitioner's success must, in large part, be attributed to Ziegler's ability. Whether Wedel or Thompson might have been equally successful, as respondent suggests, is, therefore, largely irrelevant. Nor do Ziegler's connections with other steel companies detract from the value of his services to petitioner. The true test of the reasonableness of compensation is the value of a particular employee's services to a particular employer. F. J. Ross Co., Inc., 7 B.T.A. 196. In the instant case Ziegler received 20 percent of net profits as compensation, leaving 80 percent for distribution or other corporate uses. Thus, it does not appear *271 that there was any relationship between the amount of compensation paid him and his ownership of 50 percent of the stock. That no dividends were paid during the years in question apparently was due to provisions contained in debentures issued to Glendale at the time of incorporation. It is our conclusion, therefore, that, while the amount of compensation which Ziegler received in 1956 and 1957 was large, it was paid in accordance with an agreement entered into prior to the years in controversy and in arm's-length negotiations. The rate of compensation appears to reflect Glendale's opinion of Ziegler's worth. We find no reason to override this conclusion. Cf. Klug & Smith. Co., 18 B.T.A. 966. Nothing in the evidence indicates that the rate of compensation was fixed with an eye to the distribution of earnings. Furthermore, it appears that, by any test, Ziegler's contribution to petitioner's success is unquestionable. The amount of his compensation merely reflects that success, since it was based on net profits and was fixed by percentage prior to the years in question. Ziegler formulated and was largely responsible for the successful operation of petitioner. As we said in finding reasonable *272 a salary paid in the early case of H. V. Greene Co., 5 B.T.A. 442, 455: The policies of the company represented merely the embodiment of his ideas. The responsibility of solving its problems as they arose devolved upon him. Petitioner's success testifies to the fact that Ziegler's policies were advantageous and his solutions appropriate. For all of the above reasons, we find that the contract providing for Ziegler's compensation was reasonable when entered into and that the payments made by petitioner thereunder constitute reasonable compensation. Decision will be entered for the petitioner. Footnotes
1. Four months only.↩
1. These figures represent net earnings after deduction of compensation paid Herbert Ziegler and California franchise taxes. Accordingly, the relevant figures for the fiscal years ending April 30, 1956, and April 30, 1957, are $654,522.48 and $572,822.95, respectively. Whether the other figures given for net earnings before income taxes should be similarly adjusted is not made clear by the record.
1. Sec. 1.162-7, Income Tax Regs., filed April 3, 1958. 2. Regulations 118: Sec. 39.23(a)-6. Compensation for personal services. (a) There may be included among the ordinary and necessary expenses paid or incurred in carrying on any trade or business a reasonable allowance for salaries or other compensation for personal services actually rendered. The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services. (b) The test set forth in paragraph (a) of this section and its practical application may be further stated and illustrated as follows: * * *
(2) The form or method of fixing compensation is not decisive as to deductibility. While any form of contingent compensation invites scrutiny as a possible distribution of earnings of the enterprise, it does not follow that payments on a contingent basis are to be treated fundamentally on any basis different from that applying to compensation at a flat rate. Generally speaking, if contingent compensation is paid pursuant to a free bargain between the employer and the individual made before the services are rendered, not influenced by any consideration on the part of the employer other than that of securing on fair and advantageous terms the services of the individual, it should be allowed as a deduction even though in the actual working out of the contract it may prove to be greater than the amount which would ordinarily be paid. (3) In any event the allowance for the compensation paid may not exceed what is reasonable under all the circumstances. It is in general just to assume that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises under like circumstances. The circumstances to be taken into consideration are those existing at the date when the contract for services was made, not those existing at the date when the contract is questioned.↩
3. Although there are about 100 businesses in the Los Angeles area which engage in activities roughly similar to petitioner's, petitioner argues that there is no business with a record of growth comparable to that brought about by Ziegler.↩